UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIXIE GAS & FOOD, INC.; ZAINAB, INC. dba HOMEWOOD SHELL; BW SERVICES, INC. dba ORLAND PARK SHELL; SAINT SEBASTIAN, INC. dba SHELL MINI MART; HAISAG, INC. dba HAZEL CREST SHELL; GOPI CORP. dba GOPI SHELL; and JET, INC. dba GARFIELD SHELL, <br><br> Plaintiffs, <br><br> v. <br><br> SHELL OIL COMPANY; EQUILON ENTERPRISES LLC dba SHELL OIL PRODUCTS US; and EQUIVA SERVICES LLC, <br><br> Defendants. | Judge Gottschall <br><br> Case No. 03 C 8210 |

**MEMORANDUM OPINION AND ORDER**

The plaintiffs in this action are several operators of Shell-branded gas station/mini mart businesses in Northern Illinois: Dixie Gas & Food, Inc., Zainab, Inc. dba Homewood Shell; BW Services, Inc. dba Orland Park Shell; Saint Sebastian, Inc. dba Shell Mini Mart; Haisag, Inc. dba Hazel Crest Shell; Gopi Corp. dba Gopi Shell; and Jet, Inc. dba Garfield Shell. The defendants are Shell Oil Company, Equilon Enterprises LLC dba Shell Oil Products US, and Equiva Services LLC[1] (collectively, "Shell"). Plaintiffs allege that they are all Shell franchisees, and that Shell has engaged in violations of federal antitrust law as well as various Illinois laws.

---

[1] Plaintiffs allege that Equilon and Equiva Services are related to and controlled by Shell Oil Company, and that all defendants are jointly and severally liable for the acts complained of in this lawsuit. Defendants do not contest this characterization in their motion to dismiss.

1

Before the court is Shell's motion to dismiss all nine counts of plaintiffs' complaint under Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, Shell's motion to dismiss is granted as to counts 1, 3 (only with respect to plaintiff Haisag, Inc.), 4, 6, 8, and 9, and denied as to counts 2, 3 (except as to plaintiff Haisag, Inc.), 5, and 7.

**Jurisdiction**

Plaintiffs allege federal question jurisdiction for violations of the Robinson-Patman Price Discrimination Act, 15 U.S.C. §13 ("Robinson-Patman Act"), as well as diversity jurisdiction. The remaining eight counts of the complaint allege state law claims.

**Count 2 (Robinson-Patman Act)**

As it is the basis for federal question jurisdiction in this case, the court first analyzes the sufficiency of plaintiffs' pleading as to their Robinson-Patman Act claims in count 2 of the complaint. Plaintiffs' count 2 alleges that Shell has engaged in price discrimination with respect to sales of motor vehicle fuels, in violation of the Robinson-Patman Act.

As an initial matter, Shell's motion to dismiss implies that plaintiffs must meet a heightened pleading standard for their antitrust allegations, asserting that plaintiffs' Robinson-Patman Act claims are "vague and confusing," that plaintiffs "summarily" assert injury to themselves and to competition, and that plaintiffs' price discrimination claim "is so lacking in particularity" that it should be dismissed. Unfortunately for Shell, there is no heightened pleading standard for antitrust claims. *Hammes v. Aamco Transmissions, Inc.*, 33 F.3d 774, 782 (7th Cir. 1994) (noting that the Supreme Court has disallowed lower courts from imputing rule to antitrust claims that they must be pled with particularity).

To succeed on a Robinson-Patman Act price discrimination claim, plaintiffs must allege

2

that: (i) more than one sale of commodities occurred; (ii) by the same seller; (iii) to different purchasers; (iv) at different prices among competitors; and (v) that the discrimination had a prohibited effect on competition. 15 U.S.C. § 13(a); *Goodloe v. Nat'l Wholesale Co.*, No. 03C7176, 2004 U.S. Dist. LEXIS 13630, at *26 (N.D. Ill July 3, 2004), citing *Kundrat v. Chicago Bd. Options Exch., Inc.*, No. 01C7456, 2002 U.S. Dist. LEXIS 16908, at *18 (N.D. Ill. Sept. 6, 2002), and *Windy City Circulating Co., Inc. v. Charles Levy Circulating Co.*, 550 F. Supp. 960, 966 (N.D. Ill. 1982).

Under this standard, plaintiffs have provided adequate allegations to support their Robinson-Patman Act claim. Plaintiffs have alleged that Shell engaged in more than one sale of motor vehicle fuels (Complaint ¶22, 65-66); the "same motor vehicle fuels" are the commodities that were priced discriminatorially (Complaint ¶61); that Shell actually discriminated in price between competing vendors without mitigating justification (Complaint ¶62 - 64); and that this alleged discriminatory pricing has caused injury to plaintiffs in particular and to competition generally (Complaint ¶65, 67-70). For good measure, plaintiffs have included other allegations (apparently under the assumption that they should plead facts to support all elements required to prove a Robinson-Patman violation), including that the allegedly discriminatory sales occurred in interstate commerce. (Complaint ¶66.) Shell's motion to dismiss count 2 is denied.

**Count 1 (Economic Duress)**

In count 1 plaintiffs seek damages based on their allegations that they were forced into signing franchise renewal agreements through tactics by Shell that constitute economic duress under Illinois law. (Complaint ¶¶31-59); see *Alexander v. Standard Oil Co.*, 423 N.E.2d 578, 582-83 (Ill. App. Ct. 1981). Shell first argues that this theory is preempted by the remedial

scheme of the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801, *et seq.* ("PMPA") that governs the franchisee/franchisor relationship after a franchise agreement has been terminated or non-renewed. 15 U.S.C.§ 2806. This theory has been explicitly rejected by the Seventh Circuit. *Dersch Energies, Inc. v. Shell Oil Co.*, 314 F.3d 846 (7th Cir. 2002). As was the case in *Dersch Energies*, the parties here do not dispute that plaintiffs <u>did</u> renew their franchise agreements (if under protest), which divests plaintiffs of the ability to proceed under the PMPA's provisions regarding unlawful termination or non-renewal. This does not bar them from bringing state law causes of action attacking formation of the contract. In fact, *Dersch Energies* specifically notes that state law economic duress claims are allowed as to petroleum franchise agreements. *Dersch Energies*, 314 F.3d at 862 (where plaintiff actually renewed petroleum franchise agreement, she is "entitled to bring a state law claim . . . such as economic duress").

Shell also asserts that plaintiffs' economic duress claim is identical to the "constructive termination" theory that has been rejected in PMPA cases by the Seventh Circuit. *Jet, Inc. v. Shell Oil Co.*, 381 F.3d 627 (7th Cir. 2004), affirming *Jet, Inc. v. Shell Oil Co.*, No. 02C2289, 2002 U.S. Dist. LEXIS 22951 (N.D. Ill. Nov. 22, 2002). This argument is a red herring; plaintiffs' economic duress claim is brought under state law, not the PMPA, making *Jet* inapplicable. *Jet*, 381 F.3d at 630 (holding that where franchisees actually renewed their franchise agreements, they could not state a claim "for wrongful renewal under the PMPA").

Shell also argues that there is no Illinois cause of action allowing an award of damages on an economic duress claim; rather, the theory of economic duress is available only to support avoidance of obligations undertaken as a result of actionable economic pressure. Shell's main case is *Shields Enters. v. First Chicago Corp.*, 975 F.2d 1290 (7th Cir. 1992), which directly

4

supports this position. *See also Tibor Mach. Prods. v. Freudenberg-Nok*, No. 94C7635, 1996 U.S. Dist. LEXIS 2360, at *6 (N.D. Ill. Feb. 29, 1996). Shell is correct in pointing out that plaintiffs have requested only damages, not avoidance of their franchise agreements, and have thus failed to state a claim under a theory of economic duress. Count 1 is dismissed with prejudice. *Shields Enters.*, 975 F.2d at 1297 (affirming dismissal with prejudice of claim based on non-existent Illinois cause of action for damages based on economic duress).

**Count 3 (Fraud)**

Count 3 is brought by all plaintiffs except for Gopi, Inc. dba Gopi Shell, and claims damages for common-law fraud. Shell argues that plaintiffs have failed to allege fraud with the specificity required by Fed. R. Civ. Pro. 9(b). Citing the familiar "who, what, when, where, and how" pleading standard for fraud in the Seventh Circuit, Shell claims that the complaint alleges only generally that plaintiffs were misled by Shell's representatives into believing that no rent relief measures were available from Shell to franchisees, when in fact Shell did have contemporaneous rent-relief programs available.[2] *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (describing who, what, when, where, and how pleading standard for fraud).

---

[2] Count 3 is based on allegations that each plaintiff was eligible for an "Interim Rent Challenge" (a Shell program allowing for a reduction in lease rates for franchisees who complained of high rents), that Shell intentionally withheld information from plaintiffs about the Interim Rent Challenge, and affirmatively misrepresented to plaintiffs that Shell had no procedure available to franchisees to challenge allegedly excessive rental rates. (Complaint ¶¶ 76-85.) In addition to its Rule 9 argument, Shell claims (without citation to authority) that there can be no claim for damages based on these facts, essentially because such damages would be speculative. This argument fails. While plaintiffs may face a difficult challenge in proving the extent of damages, their allegations are sufficient to state a claim. *See, e.g., McHugh v. Westpac Banking Corp.*, Nos. 93C3058, 93C3059, 1995 U.S. Dist. LEXIS 11397, at *6 (N.D. Ill. Aug. 8, 1995) (noting that allegations of lost business opportunities are sufficient to support a claim for Illinois common law fraud).

Contrary to Shell's arguments, plaintiffs have pled fraud with the specificity required by Rule 9(b). For example, plaintiffs allege:

> [i]n the case of plaintiffs Dixie Gas & Food, Inc., Zainab, Inc. dba Homewood Shell, and BW Services, Inc. dba Hickory Hills Shell, their principals, Abdul Basit and Waseem Ahmed met with Jeff Root [whom plaintiffs allege to be one of "their Equilon representatives"] at the Hickory Hills Shell service station in or about the late summer or fall of 1998 and complained to him about the high contract rents. They were told that nothing could be done about it, and they could either accept the new contract rents or give up the service stations.

(Complaint ¶¶ 75, 75(a)). This is typical of the level of specificity provided as to all plaintiffs who allege fraud, and includes each necessary allegation to complete the "who, what, when, where and how" formula. (Complaint ¶¶75(a)-(e).) Further supporting allegations are to be found throughout the complaint. Thus, Shell's motion to dismiss count 3 is denied with respect to all plaintiffs alleging fraud, with the exception of plaintiff Haisag, Inc. dba Hazel Crest Shell ("Haisag"), as to which no approximate dates of alleged misrepresentation are specifically alleged. *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 470 (7th Cir. 1999) (emphasizing importance of "when" component of pleading fraud). For this reason, Shell's motion to dismiss count 3 is granted as to Haisag only.

**Counts 4 & 5 (Illinois Franchise Disclosure Act)**

Next, Shell asserts that counts 4 and 5 must be dismissed because they fail to allege facts sufficient to establish that the Plaintiff is a franchisee within the meaning of the Illinois Franchise Disclosure Act, 815 ILCS 705/1, *et seq.* ("Franchise Act"). Shell asserts that to have standing under the Franchise Act, plaintiffs must plead allegations to support all elements establishing that plaintiffs meet the Franchise Act's definition of "franchisee" (a multi-part test according to Shell), and also argues that allegations going to each element of the claimed

6

statutory violation must be pled to avoid dismissal. The court rejects this argument, which attempts to apply state fact pleading standards in federal court where notice pleading is the law. *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("[Federal] [c]omplaints need not plead law or match facts to every element of a legal theory."). Plaintiffs have adequately pled standing under the Franchise Act; throughout their complaint plaintiffs allege that they are franchisees of Shell, and that the defendant Shell entities are franchisors. Shell's standing argument fails, and as to Count 5 (alleging inter-franchisee price discrimination prohibited by 815 ILCS 705/18), Shell makes no other argument. Shell's motion to dismiss is denied with respect to Count 5.

With respect to count 4 (alleging fraudulent business practices prohibited by 815 ILCS 705/6), however, Shell's motion to dismiss is granted. While plaintiffs do not need to plead factual allegations going to each and every element of a section 705/6 claim, they do need to plead enough to state a claim under the plain language of the statute. Section 705/6 explicitly prohibits various practices only "in connection with the offer or sale of any franchise made in this State." 815 ILCS 705/6. While count 4 sets forth many alleged actions of Shell that may (or may not) rise to the level of fraudulent practices under section 705/6, it fails to allege that these actions were undertaken in connection with the offer or sale of any of plaintiffs' franchises. The closest plaintiffs come to alleging fraud in connection with an offer or sale of one of plaintiffs' franchises is in ¶96(h) of the complaint:

> Plaintiffs are informed and believe, and based thereon allege, that SHELL, EQUIVA and EQUILON have violated § 815 ILCS 705/6 [*sic*] by . . . (h) failing to disclose that Defendants would attempt to discourage prospective buyers of Plaintiffs' franchises in an attempt to eliminate independent franchisees, such as Plaintiffs, and other unfair business practices designed at forcing franchisees to "walk away" from their stations and/or reducing the goodwill value of Plaintiffs' stations so that it could exercise a right of first refusal at an artificially low purchase price.

7

This general language, free of references to any particular proposed offers or sales of the franchises at issue in this litigation, is inadequate to allege fraudulent practices by Shell in connection with an actual offer or sale of a franchise. On this basis, Shell's motion to dismiss count 4 is granted.

**Count 6 (Illinois Deceptive Trade Practices Act)**

Plaintiffs' count 6 alleges that certain Shell business practices complained of throughout the complaint also violate Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq.* ("IUDTPA"). Here, as in *Industry Specialty Chems., Inc. v. Cummins Engine Co., Inc.*, 902 F.Supp. 805, 812-13 (N.D. Ill. 1995), "[c]onspicuously absent from plaintiff's complaint is an allegation that defendants misrepresented [plaintiffs'] products as their own, or confused the public as to the source or sponsors of their products." In other words, while Shell's business practices toward plaintiffs may be actionable under other statutes or common law, plaintiffs fail to allege anywhere in the complaint that Shell has attempted to pass off any products, or has otherwise created any likelihood of confusion as to the source of any products, and so have failed to state a claim under the IUDTPA. *McGraw-Edison Co. v. Walt Disney Productions*, 787 F.2d 1163, 1175 (7th Cir. 1986) ("Under the Illinois Deceptive Trade Practices Act a defendant is liable only if the plaintiff can establish a likelihood of confusion between the parties' products.") Shell's motion to dismiss plaintiffs' count 6 is granted.

**Count 7 (Interference With Prospective Economic Advantage)**

Plaintiff Caspian Petroleum Co. dba Orland Park Shell ("Caspian") is the only plaintiff bringing count 7, alleging interference with prospective economic advantage. Caspian claims that through delaying tactics and other unspecified interference, Shell interfered with Caspian's

attempt to sell its franchise to a qualified prospective purchaser.

To win on a claim for interference with a prospective economic advantage under Illinois law, a plaintiff must show: "(1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991). Again, a plaintiff in federal court need not allege facts going to each of these elements in detail, and here Caspian has alleged enough to assert its claim, stating that: it had a qualified prospective buyer and a signed contract to sell its franchise, that it notified Shell of the expected sale (by requesting Shell's approval), that Shell interfered with the prospective sale for the purpose of scuttling the sale, and that this (among other things) has resulted in Caspian's inability to sell its station for a reasonable price. (Complaint ¶¶124-30.) Shell's motion to dismiss count 7 is denied. *Telewizja Polska USA, Inc. v. EchoStar Satellite Corp.*, No. 02C3293, 2004 U.S. Dist. LEXIS 17936, at *35-36 (N.D. Ill. Sep. 3, 2004).

**Count 8 (Illinois Uniform Commercial Code)**

In count 8 plaintiffs (with the exception of Caspian and Haisag) allege that Shell has at various times since 1998 violated section 2-305 of Illinois' Uniform Commercial Code, 810 ILCS 5/2-101, *et seq*. Section 2-305(b) says that an open price term in a contract that is to be set by one party unilaterally must be set by that party in good faith: "§2-305. Open Price Term. . . . (2) A price to be fixed by the seller or by the buyer means a price for him to set in good faith." Plaintiffs claim that "dealer tank wagon prices" (which appears to mean the wholesale prices at

9

which Shell sells motor fuel to retail service stations) are open price terms of the dealer agreements between the complaining plaintiffs and Shell (Complaint ¶133), that Shell did not set these prices in good faith or according to reasonable commercial standards (Complaint ¶134), and that it unjustifiably provided preferred tank wagon pricing to company-owned and/or other preferred dealers. (Complaint ¶135.) When taken as true, these allegations are sufficient to state a claim that Shell did not set an open price term (dealer tank wagon prices) in good faith. 815 ILCS 5/2-305(b). Unfortunately for plaintiffs, however, the inquiry does not stop there - plaintiffs have failed to allege that they gave required notice to Shell of its alleged breaches.

810 ILCS 5/2-714 mandates that plaintiffs needed to provide Shell with notification of Shell's alleged pricing breaches: "§ 2-714. Buyer's Damages for Breach in Regard to Accepted Goods. (1) Where the buyer has accepted goods and given notification (subsection (3) of Section 2-607) he may recover as damages for any non-conformity of tender . . .". Subsection (3) of 810 ILCS 5/2-607 states that "[w]here a tender has been accepted (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach or be barred from any remedy."

The court notes that it is not immediately obvious that plaintiffs' acceptance of the allegedly overpriced fuels qualifies as acceptance of "non-conforming" goods under section 2-714. Section 2-714 non-conformity typically is associated with breaches of warranty or other claims arising from a physical non-conformity of the goods received as opposed to a "non-conformity" related to price. *See, e.g., Klockner, Inc. v. Federal Wire Mill Corp.*, 663 F.2d 1370, 1380 (7th Cir. 1981) (breach of warranty counterclaim). However, Illinois courts have found section 2-714 non-conformities for non-warranty related contractual breaches. *See, e.g.,*

*Franklin Grain & Supply Co. v. Ingram*, 358 N.E.2d 922, 925 (Ill. App. Ct. 1976) (late delivery of goods ordered). Neither of the parties has cited a case directly holding that price can constitute a section 2-714 non-conformity, nor has the court located one. The closest case on point is *Tudor v. Jewel Food Stores, Inc.*, 628 N.E. 6, 10-11 (Ill. App. Ct. 1997), in which the Illinois Appellate Court affirmed the dismissal of a grocery store customer's claim under section 2-714 that the defendant had overcharged her for groceries because the plaintiff failed to provide notice to defendants of non-conformities of marked prices versus prices charged, as required by section 2-714. The *Tudor* court did not reflect explicitly on whether price could stand as a non-conformity under section 2-714, but merely noted that plaintiff had failed to present the notice required under section 2-607 and affirmed dismissal on that ground. In the absence of contrary authority, the court accepts *Tudor*'s implication that a breach of a contractual price term can qualify as a non-conformity under section 2-714.

The court also notes that the Uniform Commercial Code Comment attached to section 2-714 states that "[t]he 'non-conformity' referred to in subsection (1) includes not only breaches of warranties but also any failure of the seller to perform according to his obligations under the contract." As discussed, one of Shell's (alleged) obligations (as implied by section 2-305(b)) under each of the contracts with plaintiffs was to sell fuel to plaintiffs according to dealer tank wagon prices that were set in good faith. 810 ILCS 5/2-305(b). Plaintiffs apparently accepted all dealer tank wagon deliveries and do not allege that they have ever provided notice to Shell of its alleged dealer tank wagon pricing breaches. Filing this lawsuit did not serve as proper notice. *Tudor,* 681 N.E.2d at 10-11 ("[O]nly a consumer buyer who suffers a personal injury may satisfy the section 2-607 notice requirement by filing a complaint against the seller.") Plaintiffs do not

11

claim that they provided any pre-lawsuit notice to Shell of the alleged nonconformities in pricing, and attempt to dismiss Shell's argument with a single irrelevant sentence. For these reasons, Shell's motion to dismiss count 8 is granted. *Klockner,* 663 F.2d at 1380 (affirming judgment against purchaser's breach of warranty counterclaim on grounds that purchaser failed to provide pre-lawsuit notice of claimed breach under section 2-607(a).)

**Count 9 (Declaratory Judgment as to All Counts)**

Count 9 of the complaint essentially duplicates plaintiffs' other counts, except that instead of requesting damages, plaintiffs request declarations of the parties' rights and obligations under various agreements, as well as declarations that Shell violated the statutes and common law rights under which plaintiffs claim for damages and other relief in counts 1-8. Under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, "[f]ederal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction." *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 747 (7th Cir. 1987). *Tempco* notes that declaratory judgment is appropriate, among other instances, where, "[t]he controversy has ripened to a point where one of the parties could invoke a coercive remedy (i.e. a suit for damages or an injunction) but has not done so." *Tempco*, 819 F.2d at 749. In distinction, here there is a suit for damages underway (via counts 1-8) based on the same issues raised in count 9. Thus, the process for determination on the merits is underway in this suit, and the additional declaratory judgment action requested by plaintiffs is redundant. *Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002), citing *Associated Mills, Inc. v. Regina Co., Inc.*, 675 F. Supp. 446, 448 (N.D. Ill. 1987); *Wireless Marketing Corp. v. Cherokee, Inc.*, No. 98C1406, 1998 U.S. Dist. LEXIS 16114 (N.D. Ill. Oct. 6, 1998); *Resource Asset Mgmt., Inc. v. Continental*

*Stock Transfer & Trust Co.*, 896 F. Supp. 782, 785 (N.D. Ill. 1995) (dismissing declaratory judgment action where larger, more comprehensive substantive action was pending in same district); *Biosite, Inc. v. Xoma Ltd.*, 168 F. Supp. 2d 1161, 1165 (N.D. Cal. 2001) (dismissing declaratory judgment action where similar substantive action involving more claims was pending in same district before same judge).

Additionally, fairness to the parties and judicial economy weigh in favor of dismissal of the declaratory judgment count here. *Amari*, 219 F. Supp.2d at 944. Both parties will be able to have the substantive merits of their positions decided without plaintiffs' declaratory judgment claims, and the litigation will be made more efficient by eliminating the unnecessary declaratory judgment count. *Id.* at 944-45. For these reasons, the court declines to exercise jurisdiction to hear count 9, and Shell's motion to dismiss count 9 is granted.

**Leave to Amend Complaint**

As to most counts, plaintiffs have requested in their response to Shell's motion to dismiss that they be allowed to amend their complaint as to any counts that are dismissed. Each of these requests is denied without prejudice. If plaintiffs would like to amend their complaint in light of this opinion (or for any other reason), they may do so in conformance with the applicable rules of the court within thirty days of the date of this Memorandum Opinion and Order.

Dated: May 25, 2005                             ENTER:

                                                ___/s/_____
                                                Joan B. Gottschall
                                                United States District Judge