UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIXIE GAS & FOOD, INC. and<br>BW SERVICES, INC. d/b/a HICKORY<br>HILLS SHELL,<br><br>        Plaintiffs,<br><br>   v.<br><br>SHELL OIL COMPANY, EQUILON<br>ENTERPRISES, LLC d/b/a SHELL OIL<br>PRODUCTS US, and EQUIVA SERVICES, LLC,<br><br>        Defendants. | Case No. 03 C 8210<br><br>Judge Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

Defendants Shell Oil Company ("Shell"), Equilon Enterprises, LLC d/b/a Shell Oil Products US ("Equilon"), and Equiva Services, LLC ("Equiva") (collectively "Shell Defendants") have filed a motion for summary judgment. For the reasons stated below, the motion is granted.

### I. BACKGROUND

A group of eight gas station operators filed suit against Shell Defendants on November 17, 2003. The plaintiffs alleged that they were Shell franchisees and that Shell Defendants engaged in various practices in an attempt to force the franchisees to convert to company-operated stations. The practices included allegedly charging franchisees higher rent and gas prices than were charged to operators of company-owned stations. After the court dismissed some counts on Shell Defendants' motion, the plaintiffs filed a five-count amended complaint on July 27, 2005, alleging violations of federal antitrust and various Illinois state laws.

1

During the last four-plus years of litigation, six of the eight plaintiffs have been dismissed, by stipulation or for failure to prosecute.[1] Since January 2007, the two remaining plaintiffs, Dixie Gas & Food, Inc. ("Dixie") and BW Services, Inc. d/b/a Hickory Hills Shell ("BW") (collectively "Plaintiffs"), have continued to prosecute the case. Discovery proceeded, with some difficulties,[2] and closed on February 28, 2006. Of the remaining four counts,[3] Dixie and BW have elected not to pursue the First Claim (Robinson-Patman Act) and Second Claim (common law fraud). Pls.' Resp. to Mot. for Summ. J. at 1 n.1. Thus, two counts remain: the Third Claim for violation of the Illinois Franchise Disclosure Act, 815 Ill. Comp. Stat. 705/1-44 ("IFDA"), and the Fifth Claim for violation of the Illinois Uniform Commercial Code, 810 Ill. Comp. Stat. 5/2-305 ("Illinois UCC").[4]

## II. ANALYSIS

**A.     Legal Standard**

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.

---

[1]Gopi Corporation d/b/a Gopi Shell, stipulation of dismissal on August 25, 2005; Caspian Petroleum Co. d/b/a Orland Park Shell and Jet, Inc. d/b/a Garfield Shell, dismissed for failure to prosecute the case on December 15, 2005; Saint Sebastian, Inc. d/b/a Shell Mini Mart and Zainab, Inc. d/b/a Homewood Shell, stipulation of dismissal on December 19, 2005; Haisag, Inc. d/b/a Hazel Crest Shell, stipulation of dismissal entered on January 4, 2007.

[2]Shell Defendants filed a motion to dismiss pursuant to Rule 37 based on the Plaintiffs' failure to respond to discovery requests. Magistrate Judge Ashman denied the motion on February 26, 2006 as mooted by performance.

[3]The Fourth Claim was brought on behalf of only one of the dismissed plaintiffs; therefore it is moot.

[4]The court notes that it has supplemental jurisdiction over the state law claims because of the original federal claim; Plaintiffs also alleged diversity jurisdiction.

Civ. P. 56(c). It is not appropriate if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325.

In response, the non-moving party cannot rest on the pleadings, but must designate specific material facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324. When considering a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the opposing party. *See Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir. 1991). However, a court is "not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (citing *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003)).

**B.     Arguments**

Shell Defendants have moved for summary judgment on the remaining two claims of Plaintiffs' complaint. With respect to the Third Claim, violation of the IFDA, Shell Defendants argue that Plaintiffs: (1) cannot prove standing because they cannot prove they paid a franchise fee, a threshold issue to IFDA applicability; and (2) cannot prove damages beyond a speculative

3

level.  For the Fifth Claim, violation of the Illinois UCC, Shell Defendants claim that Plaintiffs: (1) have no evidence of discriminatory pricing; (2) cannot prove they provided notice of non-conformity of goods to Shell Defendants; and (3) cannot avoid the contract price for accepted goods.  Shell Defendants also ask the court to disregard an affidavit Plaintiffs filed with their response to the motion for summary judgment.

1. Plaintiffs' Affidavit

With their response to Shell Defendants' motion for summary judgment, Dixie and BW filed a sixteen-paragraph affidavit with five exhibits (the "Affidavit").  The affiant is Abdul Basit ("Basit"), who is the Vice President of Dixie and the President of BW.  *See* Pls.' Statement of Facts, Basit Aff. ¶ 1.  Because the Plaintiffs rely heavily on the affidavit and its exhibits to attempt to defeat summary judgment, its admissibility is an important preliminary matter.

Rule 56(e) states that "opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e), *see also Rosemary B. v. Bd. of Educ. of Cmty. High Sch. Dist. No. 155*, 52 F.3d 156, 159 (7th Cir. 1995) (upholding the district court's decision to strike plaintiff's affidavit where it was "conclusory and not based on personal knowledge, and [the] attached exhibits [we]re unauthenticated").  Thus, "[a]ffidavits . . . create an issue of fact only to the extent that they provide evidence that would be admissible if offered live on the witness stand."  *Watson v. Lithonia Lighting*, 304 F.3d 749, 751-52 (7th Cir. 2002).  The court cannot consider material that is inadmissible or unusable at trial.  *See Scott v. Edinburg*, 346 F.3d 752, 759-60 & n.7 (7th Cir. 2003) (observing that documents must be properly authenticated and the affiant must be a person through whom the exhibits could be

admitted into evidence (internal citations omitted)); *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987) (observing that an affidavit containing hearsay statements runs counter to the requirements of Rule 56(e)). Nevertheless, an affidavit, even a "self-serving" one, can create an issue of material fact. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004).

In this case, Plaintiffs rely almost exclusively on the Affidavit in an attempt to defeat summary judgment.[5] Unfortunately, most of the Affidavit fails to meet the requirements established by Rule 56(e) and applicable case law. Basit states that the Affidavit is based on personal knowledge, Basit Aff. ¶ 2, but he rarely provides the necessary foundation to explain how he acquired that knowledge. *See, e.g.*, Basit Aff. ¶¶ 4 (stating that "Equilon does not charge all of its dealers the same price for gasoline"); 7 (stating that Equilon set prices above rack price); 11 (concluding that "Plaintiffs have lost profits"). The bulk of the Affidavit statements are based on hearsay (from documents or otherwise), are conclusory or speculative, or relate to matters which would require expert testimony. The exhibits attached as support for Basit's statements suffer from similar infirmities. Plaintiffs utterly fail to provide any foundation to allow the court to determine the basis upon which the documents would be admissible at trial, fail to provide any explanation of the relevance of raw data, and fail to direct the court to the precise location in the documents where the court can find the material that supports the Affidavit statement. *See, e.g.*, Basit Aff. Ex. 1 (seventeen pages of handwritten calculations from unspecified sources and by unknown author); Ex. 2 (unauthenticated documents showing

---

[5]The Plaintiffs submitted no defendant or witness deposition transcripts, no expert reports, and no answers to interrogatories that they propounded to defendants. In fact, Plaintiffs rely exclusively on their pleadings, documents submitted by Shell Defendants, and Basit's affidavit and its associated exhibits.

unexplained invoice data described in ¶ 5 as "listing of prices . . . received from [a competing gas station]").

Where there is no reason to believe that the statements or exhibits would be admissible at trial, the court cannot consider them in its determination of whether Plaintiffs' evidence defeats summary judgment. The court will discuss the admissibility of each Affidavit paragraph and exhibit in the applicable sections below.

   2.   Plaintiffs' Third Claim: IFDA, 815 Ill. Comp. Stat. 705/1-44

Dixie and BW allege violations of the IFDA, which prohibits a franchisor from "unreasonably and materially discriminat[ing] between franchisees . . . ." 815 Ill. Comp. Stat. 705/18. Shell Defendants argue that Plaintiffs cannot prove that they paid a franchise fee, which means they cannot establish that they are franchisees entitled to the protection of the IFDA. Mem. in Supp. of Defs.' Mot. for Summ. J. at 19 (citing Defs.' Statement of Facts at ¶¶ 37, 58).

The IFDA, by its very terms, applies only to "franchises," which the statute defines as:

> a contract or agreement, either expressed or implied, whether oral or written, between two or more persons by which:
>   (a) a franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services, under a marketing plan or system prescribed or suggested in substantial part by a franchisor; and
>   (b) the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logo-type, advertising, or other commercial symbol designating the franchisor or its affiliate; and
>   (c) the person granted the right to engage in such business is *required to pay, directly or indirectly, a franchise fee* of $500 or more . . . .

815 Ill. Comp. Stat. 705/3(1) (emphasis added). Thus, a plaintiff must establish that it can meet the requirements of this three-part statutory test before it can allege a violation of the IFDA.

Dixie & BW dispute that they paid no franchise fees. They argue that statements in

6

paragraph 3[6] of the Affidavit establish an question of material fact as to this issue. In his Affidavit, Basit states that "BW . . . paid a $6500.00 transfer to Equilon to assume the franchise rights for that station. When Plaintiffs acquired the stations from the prior owners, Plaintiffs were assigned the rights of the prior owners, including goodwill." Basit Aff. ¶ 3.

Thus, Basit asserts that BW paid $6,500, and Plaintiffs attempt to imply that this is equivalent to a franchise fee. Pls.' Resp. to Mot. for Summ. J. at 5. However, as Shell Defendants point out, this is in direct contradiction to BW's interrogatory answers. *Compare* Defs.' Statement of Facts, Tab K ¶ 22 (Interrogatory: "Describe as fully as possible any franchise fees you allegedly paid to Defendants . . . ." BW Response: "None."), *with* Pls.' Statement of Facts, Basit Aff. ¶ 3 ("BW . . . paid a $6500.00 transfer to Equilon to assume the franchise rights for that station."). "[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting [its] own previous sworn statement . . . without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (providing the example of "filing a later affidavit that flatly contradicts that party's earlier sworn deposition"). Plaintiffs do not explain the contradiction, nor do they cite anything other than the Affidavit to provide support for the franchise fee statement. Thus, the Affidavit statement about the $6,500 payment does not raise an issue of material fact as to BW's franchise fee.

Plaintiffs also offer various pieces of circumstantial evidence, which the court must view in the light most favorable to them. First, the Plaintiffs note that it is undisputed that they

---

[6]Plaintiffs actually cite to paragraph 1, but the facts they quote are contained in paragraph 3.

7

acquired the stations from past franchisees and assert that, because "[t]he prior owners of the BW and Dixie stations paid fees for the rights to operate the stations," Basit Aff. ¶ 15, the franchises and associated franchise fees were assigned to them as part of the conveyance.[7] However, Basit provides no foundation for how he knows that the prior owners paid a fee and the Plaintiffs cite to no support in the record for this assertion; therefore, this Affidavit statement is insufficient and Plaintiffs' argument is no more than speculation. Next, Plaintiffs argue that the contracts between the parties are clearly contracts between a franchisor and franchisee. Pls.' Resp. to Mot. for Summ. J. at 4 (citing to Defs.' Statement of Facts, Tabs G & J). However, Dixie & BW do not point to facts in the record that clarify how they arrived at this conclusion, nor do they point the court to the language in the nineteen-page contracts (which refer to the parties as "Retailer" and "Seller") wherein this information can be found. As the court's standing order makes clear, "[a]ll references to . . . materials must be specific. . . . The court **will not** search a multi-page document nor guess as to which language in a document the party relies on." *See* Standing Order Regarding Mots. for Summ. J. (emphasis in original); *accord Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Therefore, the court has nothing to consider in support of Plaintiffs' conclusory allegation.

Next, Plaintiffs argue that two of Shell Defendants' answers to the complaint admit that Plaintiffs are franchisees. As an initial matter, it is not sufficient for Plaintiffs, who bear the burden of proof, to rest on the pleadings to establish a genuine issue of material fact. *See Hemsworth*, 476 F.3d at 490 (citing *Celotex Corp.*, 477 U.S. at 324). Additionally, Plaintiffs' complaint allegations are compound, which means that Shell Defendants' admissions are

---

[7]The court does not reach the issue of whether this is sufficient under the IFDA.

ambiguous. *See* Defs.' Statement of Facts, Tab A ¶¶ 21 (allegation is a general statement about Shell's communications to franchisees that does not name Dixie or BW specifically), 22 (Shell Defendants ambiguously "deny the remaining allegations" in a paragraph where Plaintiffs' allege franchise agreements, admitting only that Plaintiffs purchased motor fuel from Equilon after the "assignments"). Even viewing these statements in the light most favorable to the Plaintiffs, the court finds that they do not create an issue of material fact regarding a franchise fee.

The court concludes that the evidence presented fails to establish an issue of material fact as to whether the Plaintiffs paid a franchise fee. Therefore, the court does not need to reach the issue of whether Plaintiffs can prove damages beyond a speculative level because, without proof of payment of a franchise fee, the Plaintiffs cannot establish a *prima facie* case of violation of the IFDA. "Summary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial.'" *Cleveland*, 526 U.S. at 805-06 (citing *Celotex Corp.,* 477 U.S. at 322). Plaintiffs have failed to make such a showing here. Therefore, Shell Defendants' motion for summary judgment as to the IFDA count is granted.

      3.      <u>Fifth Claim: Illinois UCC, 810 Ill. Comp. Stat. 5/2-305.</u>

Section 2-305 of the Illinois UCC provides that, in contracts with an open price term:

(1) [T]he price is a reasonable price at the time of delivery if
    (a) nothing is said as to price; or
    (b) the price is left to be agreed by the parties and they fail to agree; or
    (c) the price is to be fixed in terms of some agreed market or other standard as
    set or recorded by a third person or agency and it is not so set or recorded.
(2) *A price to be fixed by the seller or the buyer means a price for him to fix in good faith*.

9

810 Ill. Comp. Stat. § 2-305 (emphasis added). It is undisputed that the Plaintiffs contractually agreed to pay the price Shell Defendants set at the time fuel loading commenced and that Shell Defendants charged that price to Plaintiffs. *See* Dep. of Basit at 89:4-13, at Tab C of Defs.' Statement of Facts; Dep. of Ahmed at 122:18-21, at *id.* Tab D. The Plaintiffs contractually agreed that Shell Defendants had discretion to fix the price it charged to the buyer and that the price could fluctuate (presumably according to changes in the market price for fuel). Thus, the contract had an "open price term" to be fixed by the seller, which falls within the scope of § 2-305, and Shell Defendants had an obligation to fix the price to Plaintiffs "in good faith."

Plaintiffs allege that Shell Defendants violated § 2-305 by "setting [prices of fuel], left open by the contract, *in an unreasonable manner*." Pls.' Response to Mot. for Summ. J. at 6 (emphasis added). Essentially, they allege that Shell Defendants charged Plaintiffs more for fuel than was charged to other gas stations with which Plaintiffs competed. Shell Defendants argue that the Plaintiffs cannot prove the elements of their claim. Mem. in Supp. of Defs.' Mot. for Summ. J. at 20. Specifically, they argue that Plaintiffs: (1) have no evidence of discriminatory pricing as required by § 2-305; (2) cannot prove they provided notice of non-conformity of goods to Shell Defendants as required by § 2-607; and (3) cannot seek a retroactive refund and avoid the contract price for accepted goods.

In support of their first argument, Shell Defendants state that "Plaintiffs can prevail . . . only by proving that [Shell Defendants] charged Plaintiffs motor fuel prices that were (a) higher than [Shell Defendants] charged other similarly situated dealers; . . . or (b) outside the range of dealer prices charged by other refiners in the relevant geographic market." Mem. in Supp. of Defs.' Mot. for Summ. J. at 21. Plaintiffs allege that Shell Defendants engaged in both types of

10

conduct, calling both "discrimination." *See* Pls.' Response to Mot. for Summ. J. at 6 ("[Shell] Defendants discriminated in pricing.").[8] Defendants fail to provide an affirmative cite to the record to support their argument that Plaintiffs have no evidence, but they allege it, which is sufficient to suggest an absence of material fact to which Plaintiff must respond. *See* Mem. in Supp. of Mot. for Summ. J. at 22.

In response, Plaintiffs argue that *Bob's Shell, Inc. v. O'Connell Oil Assocs., Inc.*, No. 03-30169, 2005 WL 2365324 (D. Mass. Aug. 31, 2005), stands for the proposition that evidence of price discrimination defeats summary judgment on a § 2-305 claim. As Shell Defendants point out, in *Bob's Shell, Inc.*, the court emphasized the importance of proof of a viable § 2-305 claim. *See id.* at *5 ("Of course, a plaintiff still must show price discrimination, either directly or through improper motive, between similarly situated buyers."); *id.* ("Plaintiffs have provided plausible evidence for summary judgment purposes that Defendant engaged in price discrimination and/or intended to drive them out of business [including deposition testimony and circumstantial evidence]."); *id.* (comparing another case where plaintiffs "relied heavily on documentary evidence . . . and expert testimony corroborating the plaintiffs' competitive disadvantage"). *Bob's Shell, Inc.* does not hold that a plaintiff may rely on supposition and inadmissible documentary evidence to defeat summary judgment.

Plaintiffs argue that there is an issue of material fact as to whether Shell Defendants: (1)

---

[8]Neither party cites to a case in this circuit that interprets the "good faith" requirement of § 2-305 this way. *See* Mem. in Supp. of Defs.' Mot. for Summ. J. at 21 (citing *Shell Oil Co. v. HRN, Inc.*, 144 S.W.3d 429, 436-37 (Tex. 2004)); Pls.' Resp. to Mot. for Summ. J. at 7 (citing *Bob's Shell, Inc. v. O'Connell Oil Assocs., Inc.*, No. 03-30169, 2005 WL 2365324 (D. Mass. Aug. 31, 2005)). The court declines to reach the issue of whether such an interpretation is appropriate.

charged BW and Dixie different prices for "the same gasoline purchased at about the same time," (2) charged Plaintiffs different prices from prices charged to competitors; and (3) charged prices over the wholesale rack rate of other refiners. Pls.' Resp. to Mot. for Summ. J. at 7. Once again, to support these arguments, Plaintiffs rely exclusively on Basit's affidavit and its exhibits. Specifically, Plaintiffs point to Basit's averments that: (1) "Equilon does not charge all of its dealers the same price for gasoline," Basit Aff. ¶ 4, "[t]he prices charged other dealers . . . differ from the prices charged BW and Dixie," *id.* ¶ 5, and "Equilon set prices for BW above the rack rate disclosed by OPIS," *id.* ¶ 7. None of these statements appear to be within Basit's personal knowledge and he provides no foundation to allow the court to determine that they are. Further, Plaintiffs do not provide information sufficient to permit the court to establish the admissibility of the two exhibits Basit relies on for support of his statements. For example, Exhibit 1, which purportedly supports Plaintiffs' argument that dealers are charged different prices, consists of pages of handwritten tabulations, seemingly based on hearsay and offered without foundation, explanation, or specific references to allow the court to determine how and where the proof for the Affidavit statement may be found. *See id.* Ex. 1. The second exhibit, purportedly supporting Plaintiffs' argument that competitors were charged lower prices, is described as "a listing of prices . . . which [Basit] received from [Haisag, Inc.]," yet no affidavit or statement from Haisag, Inc.[9] accompanies the stack of documents to provide foundation and the Plaintiffs provide no indication of how this voluminous raw data supports their argument on discriminatory pricing. *See id.* Ex. 2. Because there is no reason to believe that the statements or exhibits would be

---

[9]It appears that this is the same Haisag, Inc. that was dismissed from this case by stipulation.

admissible at trial, the court cannot consider them in its determination of whether Plaintiffs' evidence defeats summary judgment on the § 2-305 claim. Therefore, Plaintiffs have failed to show that there is an issue of material fact in regard to their Illinois UCC claim.

The court does not need to reach this issue of whether Plaintiffs provided notice of the non-conformity of the goods as required by § 2-607. Notice only becomes relevant if Plaintiffs establish a contract breach; the contract breach Plaintiffs allege is setting an unreasonable price in an open-price term contract in violation of § 2-305, but they have failed to establish a question of material fact on this issue. Similarly, the court does not need to reach the issue of appropriate contract damages. Therefore, Shell Defendants' motion for summary judgment as to the Illinois UCC count is granted.

### III. CONCLUSION

The court grants defendants' motion for summary judgment as to Plaintiffs' Third Claim and Fifth Claim for the reasons stated above. Plaintiffs have abandoned their First and Second claims and the court hereby dismisses those counts also. The Fourth Claim in the amended complaint has been mooted by a previous dismissal of a party; therefore, this case is terminated.

ENTER:

\_\_\_\_/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 3, 2008